UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RENXIONG HUANG,

                        Plaintiff,

- against -

MINGHUI.ORG, ZHENGJIAN.ORG, EASTERN US
BUDDHAS STUDY FALUN DAFA ASSOCIATION,
RONG YI, YI CAI, HAO YE, US SOUTHWESTERN
FALUN DAFA ASSOCIATION, YOUFU LI, MID-
USA FALUN DAFA ASSOCIATION, SEN YANG,
YUN SONG, and SIWEI MENG,

                        Defendants.

**OPINION AND ORDER**

17 Civ. 5582 (ER)

Ramos, D.J.:

Renxiong Huang, proceeding *pro se*, brings this action against Minghui.org, Zhengjian.org, Eastern US Buddhas Study Falun Dafa Association, Rong Yi, Yi Cai, Hao Ye, US Southwestern Falun Dafa Association, Youfu Li, Mid-USA Falun Dafa Association, Sen Yang, Yun Song, and Siwei Meng (collectively, "Defendants"), alleging defamation and discrimination. Before the Court is Defendants' motion to dismiss Huang's Amended Complaint. For the reasons discussed below, Defendants' motion is GRANTED.

## I.    BACKGROUND[1]

Huang is a Chinese practitioner of Falun Gong, a spiritual practice whose adherents are persecuted by the Chinese Communist Party. Am. Compl. ¶¶ 1.1, 2.1, Doc. 24. In April 2003,

---

[1] The following facts, accepted as true for purposes of the instant motion, are based on the allegations in Huang's Amended Complaint and Opposition to Defendants' Motion. *See Walker v. Schult*, 717 F.3d 119, 121, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

Huang escaped from China to Thailand and then applied for refugee protection with the United Nations in May 2003. *Id.* ¶ 1.1. In July 2005, Huang moved to the United States as a Falun Gong refugee. *Id.* ¶¶ 1.2–1.3.

On July 29, 2003, while Huang's request for refugee protection was pending, Minghui.org published an article claiming that Huang was a spy working for the Chinese government. *Id.* ¶¶ 1.1–1.2. Minghui.org is a "secret organization" with anonymous members that disseminates news and information to Falun Gong practitioners around the world. *Id.* ¶¶ 1.4, 2.2. Even so, Huang attributes the article to all named Defendants because on July 20, 2003, they were present at the Falun Gong Washington conference, which was responsible for publishing the article. Am. Compl. ¶ 1.2; Pl.'s Opp'n ¶ 1, Doc. 34. Huang further alleges that Defendant Hao Ye later informed him that Defendants told "all important person[s] in charge of Falun Gong" that Huang was a spy. Pl.'s Opp'n ¶ 1.

As a result of the article, Huang contends that members of the Falun Gong mistreated him and his former wife, Yuhua Dong. Am. Compl. ¶¶ 1.3–1.4. For instance, Huang alleges that Defendant Youfu Li, the coordinator of the US Southwestern Falun Dafa Association, encouraged Falun Gong practitioners to distance themselves from Huang for fear of likewise being deemed a Chinese agent. *Id.* ¶ 1.4. Huang asserts that the psychological pressure resulting from this treatment ultimately caused his wife to divorce him. *Id.*

Additionally, Huang alleges that he was excluded from Falun Gong gatherings on five different occasions. First, Defendant Yi Cai refused to accept Huang's admission ticket for a 2006 Falun Dafa sharing conference in Washington, D.C., because he believed Huang was a spy working for the Chinese government. *Id.* Second, on February 26, 2006, a Falun Gong practitioner asked Huang to leave a Falun Gong parade in Los Angeles because Youfu Li told

him that Huang was a Chinese spy. Pl.'s Opp'n ¶ 1. Third, on July 15, 2006, Youfu Li asked Huang to leave a public demonstration in Santa Monica against the Chinese Communist Party because he believed Huang was a spy. *Id.* Fourth, Yi Cai prevented Huang from participating in a 2012 Shenyun promotion meeting in New Jersey on the grounds that he was a spy for China. Am. Compl. ¶ 2.1. And fifth, Defendant Rong Yi informed Huang in a May 2017 phone call that he would not be welcome at the upcoming annual Fa sharing conference because he was "on the black list of Falun Gong head officer Yang Sen." *Id.* ¶ 2.2 (emphasis omitted).

Huang filed the instant action on July 21, 2017. *See* Compl., Doc. 1. On November 13, 2017, Huang filed an Amended Complaint invoking federal-question jurisdiction under 28 U.S.C. § 1331,[2] and alleging discrimination under the Civil Rights Act of 1964, violations of the First Amendment, claims under 28 U.S.C. § 4101, and defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. Am. Compl. ¶¶ I, 2.3. Huang seeks more than $1.4 billion in damages and a retraction of the allegedly defamatory article. *Id.* ¶ 2.3. On January 12, 2018, Defendants moved to dismiss the Amended Complaint for failure to state a

---

[2] Huang did not invoke diversity or alienage jurisdiction. Where the amount in controversy is satisfied, the Court has jurisdiction over actions between "citizens of different States," 28 U.S.C. § 1332(a)(1); "citizens of a State and citizens or subjects of a foreign state," except where the "citizens or subjects of a foreign state . . . are lawfully admitted for permanent residence in the United States and are domiciled in the same State" as the U.S. citizens, *id.* § 1332(a)(2); and "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3). The Amended Complaint does not disclose the citizenship or immigration status of Huang or Defendants, and it is ambiguous as to Huang's domicile. *See* Am. Compl. at ECF pp. 4, 13, 42 (listing addresses or residency in Maryland, New York, and California). Accordingly, the Court assumes that only federal-question jurisdiction applies.

3

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] *See* Defs.' Mot. Dismiss, Doc. 27.

## II. LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is

---

[3] Additionally, Defendants moved to dismiss pursuant to Rule 8(a) for improper group pleading on the grounds that the Amended Complaint lumps all Defendants together in each claim without distinguishing their conduct. *See* Defs.' Mem. 6, Doc. 30. However, because Huang distinguishes Defendants and the claims against them in his Opposition, the Court declines to dismiss the Amended Complaint on this basis. *See* Pl.'s Opp'n 4–5.

4

to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

The same standard applies to motions to dismiss *pro se* complaints. *See Zapolski v. Federal Republic of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obliged to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006). The obligation to leniently read a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

## III. DISCUSSION

Huang asserts claims for (1) discrimination under Title II of the Civil Rights Act of 1964,[4] (2) violation of his First Amendment rights, (3) claims under 28 U.S.C. § 4101, and (4) defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. The Court addresses each claim in turn.

### A. Civil Rights Act of 1964

Title II of the Civil Rights Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). "[T]he overriding purpose of Title II [was] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'" *Stone v. N.Y. Pub. Library*, No. 05 Civ. 10896 (DLC), 2008 WL 1826485, at *3 (S.D.N.Y. Apr. 22, 2008) (alterations in original) (quoting *Daniel v. Paul*, 395 U.S. 298, 307–08 (1969)), *aff'd*, 348 F. App'x 665 (2d Cir. 2009). A plaintiff bringing a claim under Title II must allege facts showing (1) that he was deprived of equal use and enjoyment of a place of public accommodation and (2) discriminatory intent. *Coward v. Town & Village of Harrison*, 665 F. Supp. 2d 281, 307 (S.D.N.Y. 2009); *see also*

---

[4] The Amended Complaint alleges discrimination under the Civil Rights Act of 1964 but does not specify which title of the Act was violated. Am. Compl. ¶ 2.3. In his Opposition, Huang clarified that he alleges that Youfu Li, US Southwestern Falun Dafa Association, and Yi Cai violated Title II of the Act. Pl.'s Opp'n 4–5.

*Macer v. Bertucci's Corp.*, No. 13 Civ. 2994 (JFB) (ARL), 2013 WL 6235607, at *8 (E.D.N.Y. Dec. 3, 2013).

Huang does not plausibly allege either element of a Title II discrimination claim. With respect to the first element, none of the places which Huang was allegedly denied access to constitute places of public accommodation within the meaning of Title II. Title II defines a "place of public accommodation" as an establishment either affecting interstate commerce or supported by state action that falls into one of the following categories: "(1) a lodging for transient guests located within a building with more than five rooms for rent; (2) a facility principally engaged in selling food for consumption on the premises, including such facilities located within retail establishments and gasoline stations; (3) any place of exhibition or entertainment; (4) any establishment located within an establishment falling into one of the first three categories, and which holds itself out as serving patrons of that establishment; or (5) any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment."[5] *Bishop v. Henry Modell & Co.*, No. 08 Civ. 7541 (NRB), 2009

---

[5] The full definition reads as follows:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
>
> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
>
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and

7

WL 3762119, at *12 (S.D.N.Y. Nov. 10, 2009) (citing 42 U.S.C. § 2000a(b)), *aff'd*, 422 F. App'x 3 (2d Cir. 2011). Because Congress specified the establishments which constitute places of public accommodation under § 2000a, courts in this circuit apply the statute to only those covered establishments. *See, e.g.*, *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 305–06 (E.D.N.Y. 2017) (holding that airplanes are not places of public accommodation because none of the establishments listed in the statute remotely resemble an airplane); *Bishop*, 2009 WL 3762119, at *13 (holding that retail stores are not places of public accommodation because the "text of § 2000a does not explicitly include retail establishments"); *Verhagen v. Olarte*, No. 89 Civ. 0300 (CSH), 1989 WL 146265, at *4 (S.D.N.Y. Nov. 21, 1989) (holding that hospitals are not places of public accommodation because "the particular establishments covered by the federal statute do not include hospitals").

Considering the explicitly listed establishments covered under the statute, none of the places where Huang was allegedly excluded constitute places of public accommodation. In sum, Huang alleges that he was denied access to five places: (1) a 2006 sharing conference in Washington, D.C., (2) a February 2006 parade in Los Angeles, (3) a July 2006 public demonstration in Santa Monica, (4) a 2012 Shenyun promotion meeting in New Jersey, and (5) a 2017 annual Fa sharing conference. Am. Compl. ¶ 1.4, 2.1–2.2; Pl.'s Opp'n ¶ 1. These religious conferences, demonstrations, and parades plainly do not fall within any of the defined categories of public accommodations under Title II. Further, Huang fails to plead any facts suggesting that

---

(4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

42 U.S.C. § 2000a(b).

any of the events occurred in a facility containing or located within a covered establishment that could bring his claim within the ambit of Title II.  *Cf. Daniel*, 395 U.S. at 305 (holding that the presence of a snack bar on the premises of a club facility brought the entire facility within the ambit of Title II).  Thus, Huang fails to satisfy the first element under Title II because he fails to plausibly allege that he was denied access to a place of public accommodation.

Huang also fails to satisfy the second element because he does not plausibly allege that he was discriminated against on the basis of a class protected by the Act.  Title II protects against "discrimination or segregation on the ground of race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  To survive dismissal, a plaintiff must allege that he is in a protected class and must plead sufficient factual content to allow the court to draw a reasonable inference that the defendant was motivated by discriminatory intent.  *See Guichardo v. Langston Hughes Queens Library*, No. 15 Civ. 2866 (MKB), 2015 WL 13227995, at *4–5 (E.D.N.Y. Nov. 20, 2015) (dismissing a claim under Title II where the plaintiff did not specify his protected class and failed to allege facts supporting his claim that a library employee's refusal to help him was motivated by discriminatory intent); *see also Joseph v. Metro. Museum of Art*, No. 15 Civ. 9358 (GHW), 2016 WL 3351103, at *3 (S.D.N.Y. June 15, 2016) (holding that a museum's display of artwork containing inaccurate depictions of Jesus was insufficient to raise an inference that the museum was motivated by religious discriminatory intent), *aff'd*, 684 F. App'x 16 (2d Cir. 2017).

Here, Huang does not allege that he was discriminated against on the grounds of "race, color, religion, or national origin."  42 U.S.C. § 2000a(a).  He pleads no factual content raising a reasonable inference that Defendants were motivated by discriminatory animus against a protected class.  Indeed, the Amended Complaint plainly states that the hostility Huang faced purportedly resulted from a prevailing belief among the Falun Gong community that he was a

"spy working for the Chinese government" and not from his membership in any protected class. Am. Compl. ¶ 1.4, 2.1–2.2; Pl.'s Opp'n ¶ 1. The protected classes under Title II do not include accused spies. *Cf. Gillum v. Nassau Downs Reg'l Off Track Betting Corp. of Nassau*, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005) (holding that the plaintiff's status as a convicted felon was not a protected class under Title VII of the Act).

Thus, because Huang has failed to plausibly allege that he was discriminated against in a place of public accommodation or on the basis of a protected class, his discrimination claim must be dismissed.

### B. First Amendment

Although not clearly articulated, the Amended Complaint raises a claim that Defendants somehow violated Huang's First Amendment rights. The First Amendment protects the freedom of religion, speech, press, and assembly. However, the First Amendment protects these rights against abridgment by only the government, and private actors are typically not subject to its constraints. *See, e.g.*, *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."); *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 F. App'x 877, 879 (2d Cir. 2012) ("In the absence of any government nexus to the challenged action . . . the First Amendment does not prevent a property owner from restricting press access to private property."). Further, defamatory "[s]peech . . . cannot violate the First Amendment rights of another individual." *Fowler v. Am. Lawyer Media, Inc.*, 46 F. App'x 54, 54 (2d Cir. 2002) ("Rather, the relevance of the First Amendment to a defamation action is that the First

Amendment protects certain defamatory speech and thus may provide a defendant with a defense to liability.").

Thus, Huang's First Amendment claim is fatally flawed because he has not alleged any government nexus that could subject Defendants to the constraints of the First Amendment. And Defendants' alleged defamatory speech, while potentially protected by the First Amendment, cannot constitute a violation of Huang's First Amendment rights. Accordingly, Huang's First Amendment claim must be dismissed.

### C. 28 U.S.C. § 4101

Huang also asserts a claim under 28 U.S.C. § 4101. Section 4101 is a definitional statute[6] in service of 28 U.S.C. § 4102 *et seq.* Section 4102 concerns the recognition of foreign defamation judgments and provides that "a domestic court shall not recognize or enforce a foreign judgment for defamation" unless the domestic court determines that the judgment comports with federal constitutional or statutory law. 28 U.S.C. § 4102. The statute is inapplicable here because Huang is not seeking to obtain or preclude the enforcement of a foreign defamation judgment. Thus, Huang's claim under 28 U.S.C. § 4101 must be dismissed.

### D. State Law Claims

Federal courts have supplemental jurisdiction over state law claims if they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Nevertheless, a district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims over which it has

---

[6] For example, § 4101 defines the term "defamation" to mean "any action or other proceeding for defamation, libel, slander, or similar claim alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." 28 U.S.C. § 4101(1).

11

original jurisdiction." *Id.* § 1367(c)(3); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir.1998) ("[W]hen the federal claims are dismissed the 'state claims should be dismissed as well.'" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966))). Huang asserts a state law claim against Defendants for defamation pursuant to N.Y. C.P.L.R. § 215(3) and the Restatement (Second) of Torts. Having dismissed all of Huang's federal claims under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over and dismisses the defamation claim.[7]

## IV. LEAVE TO AMEND

The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed the "liberal spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (per curiam)).

Here, while Huang has already had the opportunity to amend his original Complaint, this is the Court's first opportunity to highlight the precise defects of his pleading, and it is not yet apparent that any further opportunity to amend would be futile. Thus, the Court dismisses

---

[7] Because the Court declines to exercise jurisdiction over the defamation claim, Defendants' motion to strike that claim under California's anti-SLAPP statute is DENIED as moot. *See* Defs.' Mem. 14–20.

Huang's claims without prejudice, and he will be permitted to replead them in a second amended complaint.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Amended Complaint is GRANTED. Defendants' request for oral argument on the motion is DENIED as moot. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 27, 38. Huang is granted leave to file a second amended complaint, and if he chooses to do so, he must file it by **August 24, 2018**.

It is SO ORDERED.

Dated: July 25, 2018
New York, New York

Edgardo Ramos, U.S.D.J.